Susan L. GOLDEN, a California Citizen, Michael M. Golden, a California Citizen, Plaintiffs–Appellees,

v.

WINJOHN TAXI CORP., a New York Corp, Jigger Service Corp., a New York Corp., Ernest Ogodo, a New York Citizen, Defendants–Appellants.

Docket No. 01–9121.

United States Court of Appeals, Second Circuit.

Argued: Sept. 20, 2002.

Decided: Nov. 21, 2002.

Michael J. Coyle, New York, NY, for Plaintiffs–Appellees.

Thomas Torto, New York, NY (Jason Levine, on the brief), for Defendants–Appellants.

Before: FEINBERG, STRAUB and MAGILL *, Circuit Judges.

_____

* The Honorable Frank J. Magill, Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

STRAUB, Circuit Judge.

Defendants–Appellants Winjohn Taxi Corp. ("Winjohn"), Jigger Service Corp. ("Jigger"), and Ernest Ogodo ("Ogodo") appeal from an August 30, 2001, judgment and a December 7, 2001, post-trial memorandum and order of the United States District Court for the Southern District of New York (Sidney H. Stein, *Judge*) following a jury verdict in favor of Plaintiff–Appellee Susan Golden ("Golden"). Golden was injured by a taxicab due to the negligence of Ogodo, the taxicab's driver. Winjohn owned the taxicab, and Jigger owned the medallion affixed to the taxicab. A medallion, which is a metal plate displayed on the outside of a taxicab, is a license issued by the City of New York that authorizes its owner to operate a taxicab.

Winjohn and Ogodo conceded Ogodo's negligence at trial, and Golden was subsequently awarded damages on her claim that she suffered a "serious injury" under N.Y. Ins. Law § 5104(a). By summary order filed on October 1, 2002, we affirmed the District Court's denial of the defendants' motions for judgment as a matter of law on Golden's serious injury claim, and also affirmed its denial of their post-trial motions for remittitur or, in the alternative, for a new trial on damages. We reserved decision on the question of whether Jigger, as the owner of the taxicab medallion, can be held vicariously liable for Golden's injuries under N.Y.C. Admin. Code § 19–530(*l*).

Section 19–530(*l*) provides that the "owner of a taxicab medallion" remains responsible for the "operation" of a taxicab bearing its medallion and for compliance with all "applicable" laws, rules, and regulations, regardless of the appointment of

an agent to provide for the operation of a taxicab on the owner's behalf. The parties dispute whether § 19–530($l$) extends vicarious liability to medallion owners for the negligent acts of taxicab drivers that cause injury to third parties, and if so, whether it does so even where the medallion owner does not own the taxicab involved in the accident. Because we are unable to discern from its plain language whether § 19–530($l$) establishes such a basis for liability, we conclude that this question is better answered by the New York Court of Appeals upon a certification from this Court.

We so conclude not only because the application of § 19–530($l$) and its related regulations is unclear in this factual context, but because construing § 19–530($l$) in the manner urged by Golden may significantly impact a highly regulated industry in New York City. For example, Golden's interpretation of § 19–530($l$) implicates the scope of the New York City Council's authority to establish such a rule of law under the Municipal Home Rule Law of the State of New York. Further, we are uncertain of the impact such an interpretation would have on automobile insurance practices in the taxicab industry. Caution therefore counsels that we defer to the New York Court of Appeals on this "determinative question[ ] of New York law." 22 N.Y.C.R.R. § 500.17(a).

## BACKGROUND

On December 13, 1997, Golden was injured when a taxicab she was stepping into suddenly lurched forward. The accident occurred in Manhattan. Winjohn owed the taxicab, and Ogodo, a licensed driver operating under a lease agreement, was the taxicab's driver. Golden suffered injuries to her hip, knee, and elbow, and subsequently brought a negligence action against Winjohn, Ogodo, and Jigger, the owner of the taxicab medallion affixed to the taxicab.[1]

Discovery revealed that Winjohn and Jigger are corporations licensed to operate taxicab services in New York City. At the time of Golden's accident, Winjohn and Jigger owned vehicles that operated out of the same garage in Brooklyn as part of a taxicab fleet managed by J & I Maintenance. Both Winjohn and Jigger shared the same president and secretary and had no employees. Winjohn, which is no longer in business, is a corporation licensed to operate "standby" vehicles. A standby vehicle is a vehicle licensed by the New York City Taxi & Limousine Commission ("TLC") to operate as a substitute vehicle when a licensed taxicab is unable to operate, for mechanical reasons or otherwise. Jigger was the owner of two taxicab medallions that were typically affixed to the two taxicabs it owned. A medallion is a license issued by the City of New York that authorizes its owner to operate a duly licensed vehicle as a taxicab. A metal plate evidencing the medallion's license number is affixed to the outside of the taxicab. On the day of Golden's accident, one of Jigger's vehicles was unable to operate. Jigger's medallion was therefore transferred to a Winjohn standby vehicle for the day. It appears that the vehicles belonging to Winjohn and Jigger were insured, although it is unclear whether Jigger's insurance policy covered the transfer of its medallion to another vehicle.

---

1. Golden sought to recover non-economic losses pursuant to N.Y. Ins. Law § 5104(a). In order to recover non-economic losses resulting from a vehicle accident in New York, a plaintiff must show that she suffered a "serious injury." N.Y. Ins. Law § 5104(a). Golden sought to recover on the ground that she had suffered a "significant limitation of use of a body organ or member." *Id.* § 5102(d).

As part of the defendants' pre-trial motion for summary judgment on Golden's claims, Jigger asserted that there is no legal basis for holding it vicariously liable for Golden's injuries because it did not own the vehicle involved in the accident. The District Court, adopting the findings of Magistrate Judge Ronald L. Ellis, denied the defendants' motion in its entirety. With respect to the issue of Jigger's liability, the court held that pursuant to N.Y.C. Admin. Code § 19–530(*l*), a medallion owner remains responsible for the "operation of a vehicle bearing such medallion" regardless of the appointment of a licensed agent to provide for the operation of the taxicab on the owner's behalf. In the District Court's view, a medallion owner's responsibility for the "operation" of a vehicle includes liability for "the negligent acts of drivers operating vehicles pursuant to [the owner's] medallion." The District Court therefore concluded that § 19–530(*l* ) expands liability to taxicab medallion owners for personal injuries suffered by passengers, even in instances in which the medallion owner does not own the taxicab involved in the accident.

At trial, the defendants conceded the liability of Ogodo and Winjohn based on Ogodo's negligence,[2] but continued to contest Jigger's liability. Golden then moved for judgment as a matter of law ("JMOL") on the issue of Jigger's liability. *See* Fed.R.Civ.P. 50(a). The District Court, finding that Winjohn was using Jigger's medallion by consent, granted Golden's motion for JMOL. The court stated that "[t]he clear intent of Section 19–530 indicates that medallion owners shall be fully responsible for the operation of the vehicle bearing such medallion, including the negligent acts of drivers operating vehicles pursuant to their medallion."

The jury subsequently ruled in Golden's favor on her claim for damages and awarded her $100,000 for past pain and suffering. The defendants moved for JMOL on Golden's injury claim at the close of evidence and again after the jury returned its verdict. *See* Fed.R.Civ.P. 50(a)-(b). The defendants also filed post-trial motions for remittitur or, in the alternative, for a new trial on damages, claiming that the jury's award was excessive. *See* Fed.R.Civ.P. 59. The District Court denied each of those motions. This timely appeal followed.

On appeal, the defendants challenge the District Court's denial of their motions for JMOL on Golden's personal injury claim, the denial of their post-trial motions for remittitur or a new trial on damages, and the court's grant of JMOL in favor of Golden holding that Jigger can be held vicariously liable for Golden's injuries. By summary order filed on October 1, 2002, we affirmed the District Court's rulings in all other respects, but reserved decision as to its holding that Jigger is liable as a matter of law for Golden's personal injuries. *See Golden v. Winjohn Taxi Corp.*, 47 Fed. Appx. 599, 2002 WL 31175228 (2d Cir. Oct.1, 2002) (unpublished summary order). We now consider that portion of the defendants' appeal.

## DISCUSSION

The question presented in this appeal is whether N.Y.C. Admin. Code § 19–530(*l* ) establishes a basis for holding a taxicab medallion owner vicariously liable for the negligent acts of a driver operating a taxicab under the authority of the owner's medallion, and whether it does so even in instances in which the medallion owner does not own the taxicab involved in the accident. In order to parse these issues,

---

**2.** Pursuant to N.Y. Veh. & Traf. Law § 388, a vehicle owner is liable for injuries caused by the negligence of those driving the vehicle with the owner's permission.

we first review the applicable regulations set forth by the Administrative Code and TLC.

The New York City taxicab industry is governed by the provisions of the City's Administrative Code, which is promulgated pursuant to the Municipal Home Rule Law of the State of New York. *See Karlin v. H & L Maint.*, No. 97 Civ. 2551, 1997 WL 720769, at *3 (E.D.N.Y. Oct.1, 1997). The Municipal Home Rule Law provides that a municipality has the "power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law relating to ... [t]he government, protection, order, conduct, safety, health and well-being of persons ... therein." N.Y. Mun. Home Rule Law § 10(1)(ii)(a)(12). The Administrative Code contains provisions relating to, *inter alia,* licensing of taxicabs and drivers and safety requirements.

The Administrative Code also describes the authority of TLC to promulgate rules and regulations for the taxicab industry. *See* N.Y.C. Admin. Code § 19–503.1. TLC was established in 1971 pursuant to § 2300 of the New York City Charter, which defines TLC's purpose as "the continuance, further development and improvement of taxi and limousine service in the city of New York." N.Y.C. Charter § 2300. *See generally Statharos v. N.Y.C. Taxi & Limousine Comm'n,* 198 F.3d 317, 321 (2d Cir.1999); N.Y.C. Admin. Code § 19–512.1 note. TLC has "broad ... authority ... to promulgate and implement a pervasive regulatory program for the taxicab industry, including standards and conditions of service, safety, design, comfort and convenience, requirements for the issuance, renewal, suspension and revocation of licenses, and requirements for the maintenance of financial security, insurance and minimum coverage." *N.Y.C. Comm. for Taxi Safety v. N.Y.C. Taxi & Limousine*

*Comm'n,* 256 A.D.2d 136, 681 N.Y.S.2d 509, 510 (1st Dep't 1998) (internal citation omitted); *see also* N.Y.C. Charter § 2300; N.Y.C. Admin. Code § 19–503.*l.*

A taxicab medallion is defined in the Administrative Code as "the metal plate issued by [TLC] for displaying the license number of a licensed taxicab on the outside of the vehicle." N.Y.C. Admin. Code § 19–502(h). Despite its tangible nature, a medallion is essentially a license that authorizes its owner to operate a so-called "medallion taxicab" or "yellow taxicab." *See* 35 R.C.N.Y. § 1–01 (a medallion "is a plate issued by [TLC] as the physical evidence of a taxicab license"); *id.* (a taxicab license is the "authority granted by [TLC] to an owner to operate a designated vehicle as a taxicab"); *see also In re Property Clerk, Police Dep't, City of N.Y. v. Rosea,* 99 A.D.2d 961, 472 N.Y.S.2d 657, 658 (1st Dep't) (noting that a medallion is an "intangible right," not "physical property"), *aff'd,* 63 N.Y.2d 961, 483 N.Y.S.2d 1010, 473 N.E.2d 260 (1984). As such, a medallion "enables its owner to own a taxicab." *Wong v. McGrath–McKechnie,* 271 A.D.2d 321, 706 N.Y.S.2d 418, 419 (1st Dep't 2000), *leave to appeal denied,* 95 N.Y.2d 762, 715 N.Y.S.2d 215, 738 N.E.2d 363 (2000). A "medallion taxicab" is defined as "[a] motor vehicle for transportation of passengers which is duly licensed as a taxicab by [TLC]." N.Y.C. Admin. Code § 11–801; *see also id.* § 19–504 (setting forth vehicle licensing provisions).

In practice, the owner of a taxicab medallion and the owner of the taxicab to which the medallion is affixed will often be the same individual or entity. In other instances, we understand, a medallion owner may lease its medallion to a separate vehicle owner, or transfer its medallion to another vehicle pursuant to TLC's regulations. *See, e.g., Karlin,* 1997 WL 720769, at *1 (describing leasing arrangement be-

tween medallion owner and vehicle owner); 35 R.C.N.Y. § 1–59 (authorizing use of a standby vehicle when a "currently licensed taxicab" is "out of service for repairs or for required inspection"). An example of the latter type of event occurred in this case, in which Jigger's medallion was transferred to Winjohn's standby vehicle on the day of the accident.

Relevant to this case are the regulatory provisions relating to an "owner's" appointment of agents. The Administrative Code defines an "owner" as "any person, firm, partnership, corporation or association owning and operating a licensed vehicle or vehicles." N.Y.C. Admin. Code § 19–502(i). Licensed owners are permitted to appoint agents to "operate or provide for the operation of a taxicab in accordance with the requirements of [the Administrative Code regulations] and any rule promulgated by [TLC]." *Id.* § 19–502(s). An "agent" is defined as "an individual, partnership or corporation that acts, by employment, contract or otherwise, on behalf of one or more owners to operate or provide for the operation of a taxicab." [3] *Id.* The term "agent" does not include "taxicab drivers licensed pursuant to [the Administrative Code regulations] when acting in that capacity." *Id.*

Notwithstanding an owner's ability to appoint an agent to operate its vehicle, Admin. Code § 19–530(*l*) provides:

Nothing herein [relating to the licensing of agents] shall relieve the owner of a *taxicab medallion* of responsibility for compliance with any applicable provision of law or rule. *Such owner shall be*

*fully responsible for the operation of a vehicle bearing such medallion,* including compliance with all regulatory requirements applicable to such vehicle, regardless of the appointment by such owner of an agent licensed pursuant to this section.

N.Y.C. Admin. Code § 19–530(*l*) (emphasis added).[4] Golden argues, and the District Court agreed, that the plain import of § 19–530(*l*) is to extend vicarious liability for a driver's negligence to a medallion owner who authorizes use of its medallion on a taxicab that is subsequently involved in an accident—even where that taxicab is owned by a separate individual or entity.

TLC's regulations to a large extent mirror those in the Administrative Code. For example, licensed owners [5] are required to abide by all "pertinent provisions of the Administrative Code and other laws, rules or regulations governing taxicab owners." 35 R.C.N.Y. § 1–60. TLC's regulations further mandate that:

an owner shall operate a taxicab through personal observation of the vehicle, personal oversight of compliance with inspection, insurance and all other regulatory requirements, and personal communication with drivers. An owner may, however, utilize employees or a licensed agent to perform any or all such functions. The use of an employee or agent shall not relieve an owner of any obligation under these rules. An owner remains fully accountable for any violations of commission rules, commit-

---

**3.** Owners frequently appoint what is known as a "lease manager" to operate the taxicab on the owner's behalf. *See* Statement of Basis and Purpose for 35 R.C.N.Y. §§ 1–75—1–77, *contained in* City Record, Oct. 30, 1995.

**4.** Section 19–530 was enacted in 1995 and went into effect in 1996.

**5.** TLC defines an "owner" as an "individual, partnership or corporation licensed by [TLC] to own and operate a medallion taxicab or taxicabs." 35 R.C.N.Y. § 1–01.

ted by any employee or agent in the operation of *such owner's medallion.*

*Id.* § 1–75 (emphasis added).[6] Thus, TLC's rules also hold owners responsible for the actions of their agents in failing to comply with applicable rules and regulations. In the event a rule or regulation is violated, TLC is authorized to impose "reasonable fines" and to "suspend or revoke any driver's license or vehicle license" regardless of the medallion owner's knowledge of wrongdoing. N.Y.C. Admin. Code § 19–506; *see also Boiadjian v. N.Y.C. Taxi & Limousine Comm'n,* 243 A.D.2d 355, 663 N.Y.S.2d 176, 176–77 (1st Dep't 1997) (medallion owners properly divested of medallions where lessees illegally removed vehicle identification number plates from taxicabs), *appeal dismissed,* 91 N.Y.2d 886, 668 N.Y.S.2d 564, 691 N.E.2d 636 (1998); *Mystic Cab Corp. v. N.Y.C. Taxi & Limousine Comm'n,* 243 A.D.2d 353, 663 N.Y.S.2d 538, 539 (1st Dep't 1997) (medallion owners properly divested of medallions where agents submitted fraudulent workers' compensation certificates; intent of TLC's rules "is clearly to hold owners strictly responsible for compliance with all TLC rules and regulations"), *appeal dismissed,* 91 N.Y.2d 886, 668 N.Y.S.2d 564, 691 N.E.2d 636 (1998).

Also pertinent to the issues raised by this appeal is N.Y. Veh. & Traf. Law § 388, which provides:

Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle ... by any person using or operating the same with the permission ... of such owner.

N.Y. Veh. & Traf. Law § 388. Section 388 holds a vehicle owner[7] vicariously liable for the negligent actions of those operating a vehicle with the owner's permission. Through § 388, New York has sought to compensate those injured through the negligent acts of a vehicle's driver by ensuring access by injured persons to "a financially responsible insured person against whom to recover for injuries." *Morris v. Snappy Car Rental, Inc.,* 84 N.Y.2d 21, 27, 614 N.Y.S.2d 362, 637 N.E.2d 253 (1994) (internal quotation marks omitted); *see also White v. Smith,* 398 F.Supp. 130, 136 (D.N.J.1975) ("[T]he main objective of [§ 388] was to provide recourse to an injured party against a person, financially able to respond, without whose conduct in permitting use of the vehicle the accident would not have happened." (quoting Report of the New York Law Revision Commission)).

Under this provision, Winjohn, the owner of the taxicab involved in Golden's accident, could be held vicariously liable for Ogodo's negligence. Because Jigger was not the owner of the taxicab, however, § 388 does not provide a basis for holding Jigger vicariously liable for Golden's injuries, a fact that Golden does not dispute. Golden instead seeks to use § 19–530(*l*) as

---

**6.** According to its Statement of Basis and Purpose, this regulation is intended to "establish controls concerning the use of agents who manage taxicabs on an owner's behalf.... Lease managers have become a major element of the taxi industry, operating a substantial percentage of the taxicabs in service.... [TLC] holds the [medallion] licensee strictly accountable for the operation of a taxicab. The Commission considers the operation of a taxicab to include all aspects of service, including compliance with insurance and other regulatory requirements." Statement of Basis and Purpose for 35 R.C.N.Y. §§ 1–75—1–77, *contained in* City Record, Oct. 30, 1995.

**7.** The term "owner" is defined as: "A person, other than a lien holder, having the property in or title to a vehicle...." N.Y. Veh. & Traf. Law § 128.

an alternative basis for holding Jigger liable for her injuries.[8]

*Karlin v. H & L Maintenance,* No. 97 Civ. 2551, 1997 WL 720769 (S.D.N.Y. Oct.1, 1997), appears to be the first court—state or federal—to have construed the language of § 19–530(*l*) in the context of a medallion owner's liability for personal injuries caused by a negligent taxicab driver. *Karlin's* facts are similar to those in the case before us: The defendant medallion owner leased its medallion to a separate corporation, which placed the medallion on a standby vehicle on the day of the accident. Thus, the medallion owner did not own the taxicab involved in the accident. In *Karlin,* the district court concluded first that the plain language of § 19–530(*l*) holds a medallion owner responsible for a vehicle's "operation." *Id.* at *2. *Karlin* then quoted from a statement by former TLC Chairman Christopher R. Lynn, made in support of adding § 19–530 to the Administrative Code, to the effect that:

> The growth of agency relationships in the taxi industry has, in practice, diffused owner responsibility for the operation of taxicabs. In the Commission's view, a medallion owner is the holder of a public license to operate a taxicab, and cannot escape the responsibilities by using a lease management company. The Commission holds a licensee strictly accountable for the operation of a taxicab. The Commission considers the operation of a taxicab to include all aspects of service, including compliance with insurance and other regulatory requirements. The Commission's answer to the diffusion of responsibility, is that the licensee—the medallion owner—remains fully responsible.... A medallion is a license to serve the public. The taxicab owner must remain responsible for service.[9]

*Id.* The district court concluded that "it is clear that the laws and rules that govern the regulation of medallion owners are meant to ensure that those who have been permitted to receive a taxi license remain responsible for any vehicle that operates under that license. Therefore, although defendant ... did not own the vehicle in which plaintiff was injured he may nevertheless be held liable for her injuries." *Id.* at *3.

The only New York state court decision seemingly on point is *Piaseczny v. Bartolo,* 271 A.D.2d 267, 707 N.Y.S.2d 45 (1st Dep't 2000), in which the Appellate Division dismissed a negligence claim against a taxicab agent, finding that there was no evidence that the agent was involved with the accident or owned the vehicle *or the medallion. See id.* at 46 (citing Veh. & Traf. Law § 128 and N.Y.C. Admin. Code § 19–530). Although it cited § 19–530, the Appellate Division offered no discussion of its interpretation of that provision. We note that in the underlying New York Supreme Court decision that *Piaseczny* affirmed, the court cited *Karlin* for the proposition that § 19–530(*l*) imposes a

---

8. Indeed, the question of whether § 19–530(*l*) extends vicarious liability to a medallion owner for the negligence of a driver would tend to arise only in the factual context before us—in which the medallion owner does not own the taxicab involved in the accident—because in instances in which the medallion owner owns the taxicab, the medallion owner would already be vicariously liable for a passenger's injuries under Veh. & Traf. Law § 388. In this latter type of case, there would presumably be no need to resort to § 19–530(*l*) for a finding of vicarious liability.

9. Much of this language reappears in the Statement of Basis and Purpose accompanying TLC's passage of its analogous regulations, §§ 1–75—1–77. *See* Statement of Basis and Purpose for 35 R.C.N.Y. §§ 1–75—1–77, *contained in* City Record, Oct. 30, 1995.

"nondelegable duty on medallion owners for the operation of the taxicab." *Piaseczny v. Bartolo, available at* N.Y.L.J., Apr. 2, 1999, at 25. Thus, the construction of § 19–530(*l*) suggested by the Appellate Division may have originated with *Karlin.*

Unlike the court in *Karlin* and the District Court below, we are not convinced that either the language or intent of § 19–530(*l*) is so plain. We reach this conclusion for several reasons.

First, although § 19–530(*l*) is seemingly clear on its face in holding "the owner of a taxicab medallion" responsible for the operation of a vehicle operated by a licensed agent, we note some degree of confusion in the regulations over the definition of "owner." As indicated above, while the owner of a taxicab medallion and the owner of the taxicab bearing the medallion will often be the same individual or entity, such is not always the case. Both the Administrative Code and TLC's regulations often appear to conflate the owner of a taxicab medallion with the owner of the actual vehicle to which the medallion is affixed, seemingly assuming that these are always one and the same. For example, the Administrative Code defines "owner" as "any person . . . owning and operating a licensed vehicle or vehicles. . . ." N.Y.C. Admin. Code § 19–502(i). This definition seems to contemplate that the licensed owner is the actual vehicle owner. In turn, § 19–530 sets forth regulations for the licensing of an agent whom an "owner" has appointed to "operate or provide for the operation of a taxicab" on its behalf, *id.* § 19–502(s); *see also id.* § 19–530, but goes on to state in § 19–530(*l*) that "[n]othing herein shall relieve the *owner of a taxicab medallion* of responsibility for compliance with any applicable provision of law or rule." *Id.* § 19–530(*l*) (emphasis added). Thus, although the licensing provisions of § 19–530 appear to arise in the context of a vehicle owner's appointment of an agent to operate its vehicle, Section 19–530(*l*), by its plain terms, broadens its coverage to "the owner of a taxicab medallion." It is therefore not altogether clear to us that § 19–530(*l*) was intended to apply to a scenario in which the medallion owner does not own the taxicab for which an agent has been appointed.[10]

Second, even assuming that § 19–530(*l*) should be read to apply to a medallion owner who leases or authorizes use of its medallion on a vehicle owned by someone else, it is unclear from its plain language

---

**10.** Similarly, former TLC Chairman Lynn's statements in support of adding § 19–530, quoted by the *Karlin* court, are ambiguous as to whether the "medallion owner" in § 19–530(*l*) is assumed to be the "taxicab owner." *Karlin,* 1997 WL 720769, at *2 ("The *taxicab owner* must remain responsible for service." (emphasis added)). The same is true with respect to the Statement of Basis and Purpose accompanying TLC's passage of its agent-licensing provisions, 35 R.C.N.Y. §§ 1–75—1–77. *See* Statement of Basis and Purpose for 35 R.C.N.Y. §§ 1–75—1–77, *contained in* City Record, Oct. 30, 1995.

Moreover, § 19–530(*l*)'s language, as interpreted by Golden, would hold a medallion owner responsible for the operation of a vehicle owned by another individual whether or not the vehicle owner has appointed an agent to "operate" the vehicle on its behalf pursuant to the licensing provisions of § 19–530. The inclusion in the agent-licensing section of the regulations of a provision for liability against a medallion owner in such a circumstance would seem somewhat odd. Also, Golden argues that Ogodo, the driver, was Jigger's statutory "agent" under § 19–530. However, the statutory definition of "agent" specifically excludes a duly licensed taxicab driver acting in that capacity. *See* N.Y.C. Admin. Code § 19–502(s). If anything, J & I Maintenance was Jigger's statutory agent because Jigger's taxicabs were operated as part of J & I's fleet. As such, Jigger certainly remained responsible for *its own vehicles'* compliance with industry regulations pursuant to § 19–530(*l*), despite J & I's role in managing the taxicabs on Jigger's behalf.

whether a medallion owner's responsibility for the "operation" of a vehicle is intended to include vicarious liability for the negligence of drivers. Section 19–530($l$) provides that a medallion owner "shall be fully responsible for the *operation* of a vehicle bearing such medallion, including compliance with all *regulatory requirements* applicable." *Id.* § 19–530($l$) (emphasis added). By using this language, it is not self-evident that the City Council intended to extend vicarious liability to medallion owners for acts and omissions that occur separate and apart from a medallion owner's regulatory responsibilities.[11]

Finally, § 19–530($l$) holds medallion owners responsible for compliance with any "*applicable* provision of law or rule." *Id.* (emphasis added). It is unclear what "applicable" law or rule we would be applying to medallion owners in this instance, as there appears to be no preexisting law or rule that extends vicarious liability to a medallion owner for passenger injuries where the medallion owner does not also own the taxicab.

Despite our difficulty in reading the statutory language as plainly as did the District Court, we could, of course, attempt to construe its meaning using the same tools of statutory construction that we often use in interpreting statutes. We hesitate to do so in this case, however, not only because the resolution of this issue affects a highly regulated New York City industry, but because interpreting the statute in the manner urged by the plaintiff raises other complicated questions that are better addressed by the New York Court of Appeals, should it choose to do so.

For example, Jigger argues that Golden's interpretation of § 19–530($l$) would render it inconsistent with N.Y. Veh. & Traf. Law § 388, thereby giving rise to a violation of the City's authority under the Municipal Home Rule Law. The alleged inconsistency arises because § 388 extends vicarious liability only to a vehicle's *owner*. The Municipal Home Rule Law authorizes local governments to enact laws "not inconsistent with the provisions of the constitution or not inconsistent with any general law ... relating to ... safety...." N.Y. Mun. Home Rule Law § 10. The Municipal Home Rule Law's requirement that local laws not be inconsistent with state laws has been interpreted to mean that such laws may not contradict or be incompatible with the general laws of the state. *See Town of Clifton Park v. C.P. Enters.*, 45 A.D.2d 96, 356 N.Y.S.2d 122, 124 (3d Dep't 1974). The district court in *Karlin* concluded that § 19–530($l$) is not inconsistent with any state law, including Veh. & Traf. Law § 388, and therefore is not a violation of the Municipal Home Rule Law. *Karlin*, 1997 WL 720769, at *3–*4. Even assuming *Karlin* is correct that the two provisions are not inconsistent, Jigger's challenge raises the issue of the scope of the City's authority to establish a medallion owner's vicarious liability for non-regulatory violations.

A more practical concern arises with respect to § 19–530($l$)'s effect on insurance coverage.[12] New York's vehicle insurance

---

11. We note also that in instances in which its regulations are violated, TLC is authorized to impose a fine, suspend or revoke a license, or seize an unlicensed vehicle. *See* N.Y.C. Admin. Code §§ 19–506(a), (h); 35 R.C.N.Y. § 1–86. The Administrative Code also sets forth certain criminal penalties for those operating taxicabs without licenses. *See* N.Y.C. Admin. Code § 19–506. These provisions do not mention an injured third party's ability to obtain damages in court.

12. We do not pretend to have a thorough understanding of the insurance relationships in the taxicab industry. We raise this issue by way of illustrating one of the questions that arises by interpreting § 19–530($l$) in the manner urged by the plaintiff.

law requires vehicle owners engaged in transporting passengers for hire to maintain minimum levels of liability insurance to compensate plaintiffs for death or bodily injury. *See* N.Y. Veh. & Traf. Law §§ 370; 388(4).[13] In turn, TLC's regulations require licensed owners to comply with state insurance regulations, and also to maintain even higher thresholds of liability insurance than are required under state law. *See* 35 R.C.N.Y. § 1–40; *see also id.* § 1–42 (owner whose insurance is canceled must surrender his medallion).[14] *See generally United Car & Limousine Found., Inc. v. N.Y.C. Taxi & Limousine Comm'n,* 178 Misc.2d 734, 680 N.Y.S.2d 815, 818 (Sup.Ct.1998) (upholding TLC's increase in insurance coverage requirements for taxicab owners because the increase rationally furthered the "governmental purpose on the part of [TLC] to further the public welfare"). TLC's regulations do not specifically require that both a medallion owner *and* a vehicle owner maintain insurance on a taxicab; rather, an individual or entity licensed to operate a medallion taxicab (i.e., an "owner" under the regulations) must obtain the requisite liability and workers' compensation insurance associated with the medallion—in other words, with the vehicle bearing the medallion.

Jigger argues that TLC's regulations meet the goal of ensuring adequate coverage for injured third parties because they require insurance coverage on all taxicabs. Indeed, not only are taxicabs required to be insured by their owners, but under the literal language of § 19–530(*l*), a medallion owner is responsible for a vehicle's compliance with "all regulatory requirements." Section 19–530(*l*) would therefore appear to impose a non-delegable duty on a medallion owner to ensure that a vehicle bearing its medallion is properly insured, further protecting injured third parties. *See Karlin,* 1997 WL 720769, at *2 ("The Commission considers the operation of a taxicab to include all aspects of service, including compliance with insurance and other regulatory requirements." (quoting Christopher R. Lynn, former TLC Chairman)). Jigger claims that allowing an injured plaintiff to recover from both a medallion owner *and* the vehicle owner, in instances in which the medallion owner does not own the taxicab, will essentially require two insurance policies because both the vehicle owner and the medallion owner will be required to insure for the same risk. Such a requirement seems inconsistent with TLC's regulations, which require only that a medallion taxicab have appropriate liability insurance coverage.

Although Jigger's arguments are not without force, § 19–530(*l*) need not necessarily be interpreted as requiring two insurance policies. As noted, under a plain reading of § 19–530(*l*), a medallion owner is required to make certain that a vehicle bearing its medallion is adequately insured, or otherwise risk losing its medallion. Extending liability for personal injuries would further encourage medallion owners to ensure that their medallions are

---

13. For vehicles seating no more than seven passengers, Veh. & Traf. Law § 370 requires that vehicle owners maintain minimum liability coverage of $25,000 and maximum liability coverage of $50,000 for bodily injury, and minimum liability coverage of $50,000 and maximum liability coverage of $100,000 for death. N.Y. Veh. & Traf. Law § 370(1)(a).

14. At the time of Golden's accident, TLC had not yet imposed these higher standards of insurance coverage on taxicab owners. Under the current provision, taxicab owners must maintain coverage of not less than $200,000 per person for basic economic losses, and minimum liability coverage of $100,000 and maximum liability coverage of $300,000 for bodily injury or death. *See* 35 R.C.N.Y. § 1–40(d).

entrusted to responsible individuals and that appropriate insurance is in place, as the medallion owner may be liable in the absence of an insurance policy. As such, the extension of vicarious liability could be viewed as imposing an even greater incentive on a medallion owner to ensure that appropriate insurance coverage exists as required by TLC's regulations. Read in that way, imposing vicarious liability on medallion owners would not necessarily be undesirable in light of the obvious goal of these industry regulations to ensure that taxicabs are adequately insured. *Cf. N.Y.C. Comm. for Taxi Safety v. N.Y.C. Taxi & Limousine Comm'n*, 256 A.D.2d 136, 681 N.Y.S.2d 509, 510 (1st Dep't 1998) (upholding financial disclosure requirements promulgated by TLC for medallion taxicab owners because the regulations reasonably furthered the "governmental purpose of assuring sufficient information to identify taxicab owners who have abused the corporate form by fragmenting their ownership into many undercapitalized corporations in order to shield assets from persons injured as a result of a taxicab's negligence"). We confess, however, that our limited understanding of taxicab industry insurance relationships, and of the full effect on those relationships of a holding that medallion owners are vicariously liable for accidents caused by others' vehicles, further counsels that we take the more cautious approach of certification.

Thus, while there may be good reasons for extending vicarious liability for personal injuries to medallion owners who authorize use of their medallion on another's vehicle, we are reluctant to declare such a rule of law where the applicable regulatory language does not appear, in our view, to be explicit. *Cf. Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51 (2d Cir.1992) (suggesting that certification is appropriate when "the statute's plain language does not indicate the answer"). The interpretation of § 19–530(*l*)'s language and the appropriateness of any inferences to be drawn therefrom is in our view best contemplated by the New York Court of Appeals. This is so in light of New York City's strong interest in supervising this highly regulated industry and ensuring the safety of its citizens and visitors, as well as its interest in overseeing the economic vitality of those employed in the taxicab industry. Indeed, interpreting § 19–530(*l*) in the manner urged by Golden raises potentially thorny questions of state law and policy, and may have ramifications on the taxicab industry that are at present difficult to foresee. This is also an issue of law that is likely to arise in the future.

Accordingly, we respectfully certify[15] the following question to the New York Court of Appeals: ·

> Does N.Y.C. Administrative Code § 19–530(*l*) establish vicarious liability against a taxicab medallion owner for the negligence of a taxicab driver, including in instances in which the vehicle involved in an accident is owned by another individual or entity but is operating under the authority of the medallion owner's medallion?

We invite the New York Court of Appeals to expand or narrow the focus of this question as the Court deems appropriate, and we welcome any further guidance the Court of Appeals chooses to offer with respect to the state law issues raised by this appeal. This panel retains jurisdiction so that we may dispose of the appeal following the Court of Appeals' decision to either provide us with its guidance or decline certification.

**15.** Although the parties did not request a certification, we are empowered to pursue this course of action *nostra sponte*. *See* 2d Cir. R. § 0.27.

It is therefore ordered that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of briefs and appendices filed in this Court by the parties.

## CERTIFICATE

The foregoing is hereby certified to the Court of Appeals of the State of New York, pursuant to 2d Cir. R. § 0.27 and N.Y.C.C.R. tit. 22, § 500.17, as ordered by the United States Court of Appeals for the Second Circuit.